VAN TASSEL v McDONALD CORPORATION

Docket No. 72535. Submitted November 5, 1986, at Grand Rapids. Decided February 24, 1987.

Janet Van Tassel met Charles Carver while vacationing in Florida. Carver, president of McDonald Corporation, which is the sub-franchiser of Baskin-Robbins Ice Cream Company, told Van Tassel she could make a lot more money owning a Baskin-Robbins franchise than she could make at the job she held at the time. Six months later, Van Tassel sold her house. She then purchased a Baskin-Robbins store in Portage, trusting Carver's statements that the store was the right one for her. Two months later, Van Tassel purchased another Baskin-Robbins store approximately ten miles from her first store. A year later, Van Tassel closed both stores. She then filed suit against McDonald Corporation in Kalamazoo Circuit Court alleging breach of the Michigan Franchise Investment Law, common law fraud, and intentional interference with her proposed sale of the stores. The court, John E. Fitzgerald, J., granted summary judgment in favor of defendant on the breach of the Michigan Franchise Investment Law claim. At trial on the remaining claims, McDonald moved for a directed verdict, which was denied. Following the trial, the jury rendered a verdict in favor of Van Tassel on the common law fraud claim. McDonald moved for judgment notwithstanding the verdict or, in the alternative, a new trial. The motion was denied. Defendant appealed.

The Court of Appeals *held:*

Every statement made by Carver and others on behalf of McDonald Corporation was purely opinion, puffing, or conjecture as to future events. Such statements do not constitute

REFERENCES

Am Jur 2d, Fraud and Deceit §§ 54-56, 57 *et seq.*; 265.

Practices forbidden by state deceptive trade practice and consumer protection acts. 89 ALR3d 449.

Fraud in connection with franchise or distributorship relationship. 64 ALR3d 6.

See also the annotations in the Index to Annotations under Fraud and Deceit.

actionable fraud. Defendant's motion for judgment notwithstanding the verdict should have been granted.

Reversed.

1. FRAUD — PUFFING.

   An action for fraud may not be predicated upon the expression of an opinion or salesmen's talk in promoting a sale, referred to as puffing.

2. FRAUD — FUTURE PROMISES.

   An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact; future promises are contractual and do not constitute fraud.

*Ryan, Jamieson & Hubbell* (by *Frederick R. Hubbell*), for plaintiff.

*Simpson & Moran* (by *Robert P. Ufer* and *Anthony M. Spaniola*), for defendant.

Before: CYNAR, P.J., and M. J. KELLY and J. A. HATHAWAY,* JJ.

PER CURIAM. After a jury verdict for damages was rendered in favor of plaintiff, Janet Van Tassel, on one count of fraud, defendant, McDonald Corporation, moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. Defendant's motion was denied and it appeals as of right.

In December, 1976, plaintiff met Charles Carver while vacationing with her aunt and uncle in Florida; Carver is the president of McDonald Corporation. Carver learned of plaintiff's dissatisfaction with her job as an audiologist with Chrysler Corporation. He suggested that plaintiff consider acquiring an ice cream franchise; McDonald was the sub-franchiser of Baskin-Robbins Ice Cream Company. Carver told Van Tassel that she was the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

right type of person to run a store and that she had business knowledge. He told her that she would never make the amount of money at Chrysler that she would if she owned her own business and that Baskin-Robbins had an excellent product. He also told her that there were opportunities to make a great deal of money. Over and over Carver stated, "[T]here are no bad locations, only bad operators."

After returning to Michigan, plaintiff looked into acquiring a franchise in Florida, and in June she decided to purchase a Baskin-Robbins store in Florida. She sold her home and moved to Florida before finding out how much the Florida store would cost. When she discovered the price was $77,000 she called Carver for his opinion. He told her the price was too high and that she could get two stores in Michigan for that price. Plaintiff did not purchase the Florida franchise.

She looked into acquiring a Bresler's ice cream store, but Carver advised her that Bresler's did not have as high a quality product or the same name recognition and that he could not help her acquire a competitor's franchise.

Later in June, Carver told plaintiff that he thought he had an available store in the Southland Mall in Portage, Michigan. He described it as a gold mine and added that if it was not available he would find her another one that would make her just as much money. He told her it would not be long before she would be driving a big car and living in a big house and she would do all right if she stuck by him. He assured her he would not steer her wrong because he liked her. Carver told plaintiff that the people who were presently in the Portage store were not "doing right" by him. He predicted that she would own it for a year and then go to work for him at corporate headquarters.

Carver reiterated that the Southland store was a gold mine.

Carver verified that the store was available and offered to fly plaintiff to Michigan at McDonald's expense to look at the store. She declined. She did, however, move back to Michigan and begin training as a Baskin-Robbins operator. She told Carver she did not need to see the store, she trusted him and if he thought it would be right for her, she would take it. Carver told her that it was the right store for her and that all she will be doing is playing golf and making the bank deposits.

During her training, Carver told her she was not going to lose money and that this would be the best thing that would happen to her.

On July 29, 1977, Ray Brooks, McDonald's regional director, took plaintiff to visit the Southland store and several other Baskin-Robbins franchises in Michigan. Brooks told her that the present managers were cheating Carver, but that the store was a good buy and with hard work she would make money.

On August 12, 1977, plaintiff purchased the Southland store. To do so she signed a $30,000 promissory note, which provided for repayment of principal and interest as a surcharge on ice cream purchases from defendant. She was not required to make any down payment.

During a meeting for all owners having franchises with McDonald in September, 1977, plaintiff voiced concern to Carver that business was not up to her expectations; Carver responded that she should not worry because the previous manager "ran it into the ground" and that it would take time to recover. Plaintiff alleged that this was the first she knew that the store had previous problems.

In October of that year, plaintiff purchased another Baskin-Robbins franchise about ten miles from the Southland store in the Maple Hill Mall. Plaintiff's allegations of fraud leading to purchase of the Maple Hill store are not at issue.

Plaintiff closed both franchises on November 6, 1978. After a proposed sale of the stores by plaintiff fell through, McDonald sold the Southland store to Margie Hall Candela.

On February 13, 1979, plaintiff filed this action alleging breach of the Michigan Franchise Investment Law, MCL 445.1501 *et seq.;* MSA 19.854(1) *et seq.,* and common law fraud in her purchase of the Southland and Maple Hill stores, and intentional interference with plaintiff's proposed sale of the stores. Summary judgment was granted in favor of McDonald on both of plaintiff's claims of breach of the Michigan Franchise Investment Law. Pursuant to stipulation of the parties, defendant Baskin-Robbins was dismissed.

At trial, plaintiff's accountant testified that he had never prepared any summaries of plaintiff's profits and losses, however, plaintiff's federal income tax return for 1977 showed a net tax loss for both stores of $1,582.46 and for 1978 showed a net tax profit of $287.79. Plaintiff testified that time constraints had prevented her from keeping financial records according to procedures set forth in the Baskin-Robbins management guide.

At the conclusion of plaintiff's proofs, McDonald moved for a directed verdict on the grounds that the proofs did not show that each of plaintiff's two stores sustained a loss. The motion was denied. Following completion of the trial, the jury rendered a verdict in favor of plaintiff on the count alleging common law fraud in the sale of the Southland store, assessing $42,000 actual damages and $2,500 punitive damages. On McDonald's

counterclaim for breach of the franchise agreement, the jury awarded $2,400.

On December 22, 1981, McDonald filed its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. From the denial of that motion, defendant appeals.

On appeal defendant contends that all of its representations fell within the categories of (1) opinion, (2) puffing, or (3) statements pertaining to future events and that, viewed as such, they could not constitute actionable fraud. We agree.

An action for fraud may not be predicated upon the expression of an opinion or salesmen's talk in promoting a sale, referred to as puffing. *Windham v Morris,* 370 Mich 188; 121 NW2d 479 (1963); *Hayes Construction Co v Silverthorn,* 343 Mich 421; 72 NW2d 190 (1955); *Graham v Myers,* 333 Mich 111; 52 NW2d 621 (1952).

In *Graham, supra,* a used-car dealer represented that an automobile was in "good shape—a nice, clean car." *Id.,* p 114. The automobile proved after its purchase by the plaintiff to have mechanical problems. In holding that a directed verdict against the plaintiff should have been granted, the Supreme Court relied on the rule that "[a] mere honest expression of opinion will not, although proved erroneous, be regarded as fraud." *Id.,* p 115.

In *Schuler v American Motors Sales Corp,* 39 Mich App 276; 197 NW2d 493 (1972), the defendants represented that the inventory of an automobile dealership consisted of "new, salable automobiles," *id.,* p 278. This Court affirmed the trial court's grant of judgment notwithstanding the verdict for the defendants, characterizing the defendants' representation as opinion and noting that the plaintiff could have readily discovered every material fact known to the defendants.

A variant of the rule regarding statements of

opinion concerns puffing. In *Hayes Construction Co, supra,* the plaintiff purchased furnaces for a construction project on the basis of the defendant's representations that the furnaces "would do the job," use minimal amounts of fuel, and require little maintenance. *Hayes, supra,* p 426. In its affirmance of judgment for the defendants, the Supreme Court held that these representations were puffing, noting:

> [W]e are here in the realm of what the common law has for years termed "puffing," a salesman's praise of his own property, involving matters of estimate or judgment upon which reasonable men may differ. Ordinarily these are not regarded as actionable, even though the vendee's joys of realization fall short of those of his anticipation. The reason for this lies in the realities of commercial intercourse. [*Id.,* p 426.]

The Court added that it is within normal expectations of commercial dealing for salesmen to "hype" their products beyond objective proof.

On appeal, McDonald also makes the separate but related argument that the statements made by Carver and others pertained to future events and that fraud may not be premised upon such statements. Examples of those statements include: "[y]ou won't regret becoming a Baskin-Robbins owner," if you work hard, "there was a lot of money to be made," "[i]t won't be long before you'll be driving a big car and living in a big house," "you [will] come and work for me in Ann Arbor." The thrust of Carver's alleged statements was that the Southland store would be a profitable business venture for plaintiff in the future.

In *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976), the Supreme Court stated:

> [A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud.

In *Hi-Way Motor Co,* the defendant verbally promised the plaintiffs that the plaintiffs would have the exclusive heavy-duty truck dealership for the Alpena area so long as the plaintiffs did a reasonable job. When another dealer in that area was granted a franchise by the defendant, the plaintiffs brought an action for fraud. The Supreme Court affirmed this Court's reversal of the trial court's judgment for the plaintiffs.

In *Roy Annett, Inc v Kerezsy,* 336 Mich 169; 57 NW2d 483 (1953), the plaintiff brought a suit for specific performance of an option, and the defendants asserted fraud as a defense. The defendants alleged that they were induced to give the option in reliance on the plaintiff's statements that an apartment building would be constructed on or near the property, that special assessments would be levied against the property, and that a road would be built through the property. The Court applied the rule that "erroneous conjectures as to future events" were not fraud. *Id.,* p 172 (quoting 26 CJ, Fraud, § 25, p 1087). The trial court's order enforcing the option was affirmed.

In the instant case, the evidence adduced by plaintiff of the alleged misrepresentations of Carver and others show every statement was purely opinion, puffing, or conjecture as to future events. Carver merely represented that plaintiff could make the store very profitable; he was apparently mistaken.

Carver's opinion was that plaintiff was the right type of person to run a store, that plaintiff could make more money owning her own business than

she could at Chrysler, and that there are no bad Baskin-Robbins locations, only bad operators. These reflect Carver's own opinions. Carver also told plaintiff that the Southland store was a gold mine and that Baskin-Robbins has an excellent product; these statements are opinion or puffing. Carver's descriptions of plaintiff's bright future driving big cars, living in a big home, and golfing all day long are purely speculation as to future events. Had Carver misrepresented to plaintiff that the current owners were making large profits owning that store, this case would be a different matter.

Furthermore, although plaintiff did not become rich owning the stores, her successor, Ms. Candela, apparently ran the business profitably. Candela, however, was not allowed to testify to the amount of profit because the trial court ruled the evidence irrelevant.

We also note that due to plaintiff's deficient record-keeping methods plaintiff's damages are speculative, at best. Defendant has not and does not intend to collect its $30,000 promissory note from plaintiff.

Defendant's motion for judgment notwithstanding the verdict should have been granted.

Reversed.