**In re James DeROSA and Roberta De Rosa, Debtors.**

**James DeROSA and Roberta De Rosa, Plaintiffs,**

v.

**BOSTON BAKERY & ITALIAN FOOD SPECIALTY, INC. and Carl DiStefano, Defendants.**

**Bankruptcy No. 8700054.**
**Adv. No. 870077.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 8, 1989.

---

**6.** These items consist of: (1) the grounding pit, $815.79, (2) hardware, $1,934.34, (3) landscaping, $2,000, and (4) painting, $6,140.

Joseph S. Votta, Jr., Votta & Votta Law Offices, Ltd., Providence, R.I., for debtors.

David A. Schechter, Providence, R.I., for defendants.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

On March 29, 1989, we entered a judgment in favor of the plaintiffs, the DeRosas, rescinding the June 6, 1986 franchise agreement, and awarding them damages in the amount of $36,342.24, after finding that the defendant franchisors, Carl DiStefano and the Boston Bakery and Italian Food Specialty, Inc. ("Boston Bakery") had breached the franchise agreement. In that decision, we considered only plaintiffs' breach of contract claim, which we believed (and still do believe) was dispositive. Left undecided in our June 6 decision, were plaintiffs' claims alleging negligent misrepresentation (count 1); violation of state franchise statutes (count 4); intentional misrepresentation (count 5); and fraud and deceit (count 6). We noted that consideration of these additional claims would be deferred "until a later time, if needed." (*See* Decision and Order dated March 29, 1989, p. 1, n. 2). Nevertheless, on June 2, 1989, we entered an order granting the defendants' Motion for Alteration or Amendment of Judgment pursuant to Fed. R.Civ.P. 59(e), because we were persuaded

by the defendants' argument that "to avoid piecemeal litigation and for purposes of judicial economy, the wiser course is for this Court to decide all of the plaintiffs' claims in the first instance, before submitting the judgment to review on appeal." (*See* Order dated June 2, 1989, p. 2). Since that "later time" has arrived, we have before us again for consideration, the plaintiffs' remaining counts which were not adjudicated in our March 29, 1989 Decision and Order.

## A. NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION[1]

Initially, we note that the "clear and convincing" standard of fraud and misrepresentation is not applicable here, as it would be in a § 523 nondischargeability proceeding,[2] since it is the debtors who are the plaintiffs, and who assert a state law cause of action for negligent and intentional misrepresentation. In order for the plaintiff-debtors to establish such a state law cause of action, the following elements must be proven: (1) a misrepresentation of a material fact; (2) which representation is in fact false (whether made innocently, negligently or knowingly); (3) which was made to induce the plaintiff to act in a certain manner in reliance thereon; (4) which representation is relied upon by the plaintiff; and (5) with damage resulting therefrom. *Halpert v. Rosenthal*, 107 R.I. 406, 267 A.2d 730 (1970); *Silvia v. Wicks*, 116 R.I. 545, 359 A.2d 33 (1976) (relying on *Halpert, supra*); *Associates in Anesthesia v. Mutual Ben. Life*, 504 A.2d 477, 479 (R.I.1986) (sets forth elements for intentional misrepresentation). In Rhode Island, we are to consider "not whether the representation is knowingly false, but whether the other party believed it to be true and thus was misled by such misrepresentations into making the contract." *Halpert, supra*, 107 R.I. at 414, 267 A.2d 730 (citing *Watkins v. Grady County Soil & Water Conservation District*, 438 P.2d 491, 495 (Okla.1968)).

James DeRosa testified, and we find that the following statements/representations were made by Carl DiStefano while the parties were negotiating the franchise agreement:

1. DiStefano assured the DeRosas that they would make a 100% profit on everything that they bought from his bakery ("the mother store") and sold in their (DeRosas') store. Specifically, DiStefano told DeRosa that operating costs and expenses would run about $2500 per week, and that he would take in about $5,000 per week, for a net profit of approximately $2500 per week. These oral representations are evidenced by figures which DiStefano put in writing for DeRosa, as inducement to enter into the franchise relationship. (*See* Plaintiffs' Exhibits 1, 2, 3, 4).[3]

2. DiStefano also represented to DeRosa that because his (DiStefano's) store would be doing all the baking, DeRosa wouldn't be burdened with that, and instead, could concentrate on just selling his (DiStefano's) "superior" product. DiStefano also declared himself "the best damn baker in all of New England," and told plaintiffs that their business could be just as successful as his, because DiStefano was doing the baking.[4]

---

**1.** We incorporate herein our March 29, 1989, findings of fact and conclusions of law. In addition, this opinion constitutes further findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.

**2.** *See, e.g., In re Coughlin,* 27 B.R. 632 (B.A.P. 1st Cir.1983); *In re King,* 96 B.R. 413 (D.Mass. 1989).

**3.** DiStefano estimated expenses would be approximately $1300.00 per week. In addition, the product to be purchased from "the mother store" was estimated at $1200 per week. Together, total weekly costs were represented to be about $2500. Mr. DeRosa relied on these calculations, and on DiStefano's gross sales projections of $5,000 per week, to arrive at a minimum net profit of $2500 per week. It is clear that, in the negotiating process, the DeRosas were no match for Carl DiStefano and that in plain and simple terms, DiStefano took complete advantage of the DeRosas, and knowingly, also.

**4.** This is obviously a classic, subjective example of the "puffing" engaged in by sharp sellers all the time, and is not the basis for our decision. Rather, we have based our findings on DiStefano's outright misrepresentations and lies.

3. Because he was fully aware of their lack of experience, DiStefano promised not only to teach the DeRosas how to run the business, but also to train them in the implementation of efficient business methods, product information, and the baked goods sales business in general. In fact, in our March 29, 1989 decision, we found that the franchise fee of $15,000 was paid to DiStefano and the Boston Bakery *primarily* for the assistance, advice and business expertise which the DiStefanos were to pass on to the DeRosas in this new (to them) venture.[5]

4. While negotiating the terms of the franchise, DiStefano told DeRosa that everything on the product list (Plaintiffs' Exhibit 15) would be available, and that all of the product he supplied would be fresh baked, daily. In this regard, DiStefano stated that if DeRosa found anything wrong with any of the product, he could return it for replacement.

5. Additionally, but by no means least, DiStefano represented that he would make "little or no profit" on the sale of equipment to DeRosa, which, by the terms of the agreement, DeRosa was required to purchase from or through DiStefano. (*See also* Decision and Order of March 29, 1989 p. 2, paragraphs 7, 8, 9.)

■ Based upon the entire record, including the obvious fact that the DeRosas lacked any previous business experience, we find that the foregoing representations were reasonably relied upon by the DeRosas, in deciding to enter into the franchise agreement, and that they would not have done so in the absence of said representations. Given the effect of these statements and promises on the conduct of the DeRosas, that is, their decision to enter into the franchise agreement, they are also clearly material. A representation is material if "it becomes likely to affect the conduct of a reasonable man [person] with reference to a transaction with another person." *Halpert, supra*, 107 R.I. at 413, 267 A.2d 730 (citing Restatement of Contracts, § 470(2) at 891).

Two more subtle issues remain, however, and they are: (1) whether the representations made by DiStefano were statements of fact, as opposed to mere expressions of opinion; and, (2) whether said representations were false at the time they were made.

■ The general rule is that "[a]n action for fraud may not be predicated upon the expression of an opinion or salesmen's talk in promoting a sale, referred to as puffing." *Van Tassel v. McDonald Corp.*, 159 Mich.App. 745, 407 N.W.2d 6 (1987) (citing *Windham v. Morris*, 370 Mich. 188, 121 N.W.2d 479 (1963)). During trial, DeRosa stated that he believed and relied upon DiStefano's representations of expected profits, of the cost of the equipment, the supervision and assistance to be given, and the quality of the product to be provided under the franchise agreement. When cross-examined as to whether he understood these to be statements of fact, as compared to just sales talk, DeRosa conceded that he thought the representations regarding anticipated profits were DiStefano's best estimate, or in other words, his opinion. Although we must agree that the representation of expected profits appears to be, at most, a statement of opinion which is not actionable, it is equally as clear that DiStefano's other representations are statements of fact, and definitely actionable. DiStefano's oral representations concerning the minimal profit he would make on the equipment, the quality of his product, the amount and expertise of the assistance he would give, as well as the language in the franchise agreement which promised DeRosa the assistance of the Franchisor [6] (*See* Plaintiffs' Exhibit 5, Sec-

---

5. In our March 29, 1989 decision we held, mainly because this was the Boston Bakery's first franchise, that the fee was not for the value/use of the defendant's mark, which had no established recognition value, but instead, was mainly for the assistance and guidance which the DiStefanos promised to pass on to the DeRosas.

6. Section Four entitled "Continuing Supervision and Assistance" provides that:
   Franchisor shall maintain a bona fide interest in the success of Franchisee's business during the term of this agreement and shall provide the following:

tion Four), and a full line of products,[7] are clearly all intentional (mis)statements of fact. DiStefano made these representations as the inducement upon which the franchise agreement was negotiated, and we conclude that, but for said representations, the DeRosas would not have been persuaded to do business with him.

■ An additional factor to consider is that these statements involve promises to perform in the future. Such promises "may be actionable where the maker did not intend to perform the promise at the time of making it." Annot., 64 ALR3d 6, 14 (1975). Having in mind the meager and clearly inadequate assistance given to the DeRosas—an initial two week instruction, and then such advice as to "turn the pastry more," in response to customer complaints regarding quality, DiStefano's offer to purchase the business for a small fraction of what DeRosa had just invested, on the defendant's advice, and finally the 30% undisclosed "fee" taken on the equipment, we find, without doubt, that, at the time they were made, DiStefano never intended to fulfill his promises of assistance and/or supervision, never intended to offer a full line of baked goods, never intended to provide the DeRosas with a product of uniform quality for resale,[8] and did intend to make an unconscionable profit on the sale of the equipment. We find these actions to be contrary to the oral and written representations, and to have been so intended by the defendants at the time each of such representations were made. Because the DeRosas believed these representations were true, and reasonably relied on them in entering into the franchise agreement, both negligent and intentional misrepresentation have been established, and the DeRosas

are entitled to rescind the contract and collect the restitution and reliance damages previously calculated.[9]

## B. VIOLATION OF FRANCHISE LAW

■ Plaintiffs also argue that the defendants violated R.I.Gen.Laws 19–28–5 (1956, reenactment 1982), entitled "Application for registration—Disclosure," by failing to register the franchise with the Director of Business Regulation.

Significantly, § 19–28–2, entitled "Legislative intent" highlights the purpose of the "franchise and distributorship investment regulations act." It provides in relevant part that:

The legislature hereby finds and declares that the widespread sale of franchises and distributorships is a relatively new form of business which has created numerous problems both from an investment and a business point of view in the state of Rhode Island. Franchisees and distributees have suffered substantial losses when the franchisor, distributor or his representative has not provided full and complete information regarding the franchisor-franchisee ... relationship, the details of the contract between franchisor and franchisee ... and the prior business experience of the franchisor, distributor, or their representatives.

It is the intent of this chapter to provide each prospective franchisee ... with the information necessary regarding franchises ... being offered. Further, it is the intent of this chapter to prohibit the sale of franchises where such sale would lead to fraud or a likelihood that the franchisor's ... representations would not be fulfilled, and to protect the

---

1. Regular reports of improvements in business methods developed by Franchisor and other Franchisees, if any.
2. The services of Franchisor's advertising to assist Franchisee.
3. On Franchisee's request, the personal assistance and counsel of a qualified representative of Franchisor.

7. Section Six entitled "Food Products to be Sold" provides that "[a] full line of products identified with Franchisor's system shall be available to Franchisee."

8. For instance, DeRosa testified that they often received overcooked or irregular sized/shaped pastry (*see* Plaintiffs' Exhibit 10), which their customers either returned or complained about. In addition, the store's opening was often delayed because of late deliveries.

9. The plaintiffs' damages are the same as determined in our March 29, 1989 decision.

franchisor ... and franchisee ... with regard to their business relationship.

R.I.Gen.Laws 19–28–2 (1956, reenactment 1982).

Section 19–28–5 states:

[I]t shall be unlawful for any person to offer or sell any franchise in this state unless the offer of the franchise has been registered under this section or exempted under sec. 19–28–4 of the general laws.

The remainder of § 19–28–5 lists the types of disclosures required to be provided in the application for registration of an offer, which the prospective franchisor is required to file with the Director of Business Regulation. For example, the franchisor is required to disclose:

(1) The length of time the franchisor: (1) has conducted a business of the type to be operated by the franchisees, (2) has granted franchises for such business, and (3) has granted franchises in other lines of business. § 19–28–5(B)(6).

(2) A recent financial statement of the franchisor, together with a statement of any material changes in the financial condition of the franchisor from the date thereof. The director may by rule or order prescribe: (1) the form and content of financial statements required under this law, (2) the circumstances under which consolidated financial statements shall be filed, and (3) the circumstances under which financial statements shall be audited by independent certified public accountants or public accountants. § 19–28–5(B)(7).

(3) A copy of the typical franchise contract or agreement proposed for use or in use in this state. § 19–28–5(B)(8).

(4) A statement of the franchise fee charged, the proposed application of the proceeds of such fee by the franchisor and the formula by which the amount of the fee is determined if the fee is not the same in all cases. § 19–28–5(B)(9).

(5) A statement describing any payments or fees other than franchise fees that the franchisee or subfranchisor is required to pay to the franchisor, including royalties and payments or fees which the franchisor collects in whole or in part on behalf of a third party or parties. § 19–28–5(B)(10).

(6) A statement of the conditions under which the franchise agreement may be terminated or renewal refused, or repurchased at the option of the franchisor. § 19–28–5(B)(11).

(7) A statement as to whether, by the terms of the franchise agreement or by other device or practice, the franchisee or subfranchisor is required to purchase from the franchisor or his designee service, supplies, products, fixtures or other goods relating to the establishment or operation of the franchise business, together with a description thereof. § 19–28–5(B)(12).

(8) A statement as to whether, by the terms of the franchise agreement or other device or practice, the franchisee is limited in the goods or services offered by him to his customers. § 19–28–5(B)(13).

(9) A copy of any statement of estimated or projected franchisee earnings prepared for presentation to prospective franchisees or subfranchisors, or other persons, together with a statement setting forth the data upon which such estimation or projection is based. § 19–28–5(B)(16).

The franchisor is also required to furnish a prospectus to the prospective franchisee, which must include:

[T]he material information set forth in the application for registration, as specified by rule of the director, and such additional disclosures as the director may require. The director shall not require disclosure in the prospectus of information submitted under subsection (B)(5) of this section. § 19–28–5(E).

The penalty for noncompliance with this Chapter is provided in § 19–28–9, entitled "Enforcement—Civil liability."

Any person who offers or sells, a franchise in violation of this chapter, shall be liable to the franchisee who may sue for damages caused thereby, and if such violation is wilful, the franchisee may also sue for rescission. . . .

Neither Carl DiStefano nor the Boston Bakery ever filed an application to register the offer or sale of the DeRosa franchise with the Director of Business Regulation. It seems, in hindsight, that the Rhode Island legislature must have had Mr. DiStefano in mind when it enacted Title 19, since he has turned out to be precisely the type of franchisor intended to be protected against, according to the legislative intent.

The defendants' total disregard of the plain language of § 19–28–5 constitutes a violation of § 19–28–9 which entitles the plaintiffs to damages. In our March 29, 1989, decision, we determined that the plaintiffs sustained $36,342.24 in damages, and that amount is reaffirmed here.

## C. FRAUD AND DECEIT

■ Finally, the plaintiffs allege, and have proved, that defendant DiStefano agreed to sell "all necessary equipment to the Plaintiff on a '[c]ost [o]nly' basis" and that the

> [d]efendant deceived [them] by his failure to comply with his promise by charging the Plaintiff prices that included a substantial profit for the Defendant, and which were considerably higher than prices that the Plaintiffs could have obtained from other sources.

Plaintiffs' Complaint, Count 6.

We find, without difficulty, that DiStefano represented to the DeRosas that he would make "little or no profit" on the sale of the equipment, while in fact he kept an undisclosed profit of $5,300, which amounts to a 30% commission on the items purchased (*See* Decision and Order of March 29, 1989, p. 2). We have already concluded in section A, above, that this constituted a material misrepresentation. We need not repeat that discussion here.

Accordingly, based on the entire record, and for all of the reasons given heretofore, it is hereby ORDERED that the franchise agreement dated June 6, 1986, be and hereby is rescinded, and that the defendants are liable, jointly and severally to the plaintiffs for a total of $36,342.24 in damages for their negligent and intentional misrepresentation of material facts, and their violation of R.I.Gen.Laws 19–28–5.

Enter Judgment accordingly.[10]

---

**10.** The defendants did not raise the question of the core-non core issue in the pleadings, except in a very oblique way, in their Answer. The issue was not raised again until the start of the trial. We ruled then, as we do now, that the defendants have waived this defense by not properly raising it, either in the pleadings or in the pretrial order, joint or otherwise. For these reasons, we enter a judgment herein, pursuant

to 28 U.S.C. § 157(b)(1). However, if it is determined on appeal that the subject dispute is a non-core proceeding, and that we do not have the authority to enter a judgment in the matter, the foregoing discussion should be treated as proposed findings of fact and conclusions of law, pursuant to Bankruptcy Rule 7052 and Fed.R.Civ.P. 52.