*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0229P (6th Cir.)
File Name: 00a0229p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LITTLE CAESAR ENTERPRISES,
INC., LITTLE CAESAR
NATIONAL ADVERTISING
PROGRAM, INC.,
     *Plaintiffs-Appellants/
      Cross-Appellees,*

     *v.*

OPPCO, LLC,
     *Defendant-Appellee/
      Cross-Appellant.*

Nos. 98-1573/1736

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 95-72370—Horace W. Gilmore, District Judge.

Argued: August 6, 1999

Decided and Filed: July 14, 2000

Before: JONES, SILER, and GILMAN, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** David A. Ettinger, HONIGMAN, MILLER,
SCHWARTZ & COHN, Detroit, Michigan, for Appellants.

1

Rodger D. Young, YOUNG & ASSOCIATES, P.C., Southfield, Michigan, for Appellee. **ON BRIEF:** David A. Ettinger, Steven P. Schneider, HONIGMAN, MILLER, SCHWARTZ & COHN, Detroit, Michigan, for Appellants. Rodger D. Young, Terry Wuester Milne, YOUNG & ASSOCIATES, P.C., Southfield, Michigan, for Appellee.

————————————

### OPINION

————————————

NATHANIEL R. JONES, Circuit Judge.  This is a breach of franchise action between Little Caesar Enterprises, Inc. ("Little Caesar") and OPPCO, LLC ("OPPCO"), a company through which Erich Overhardt purchased four Little Caesar franchises.  Overhardt closed the stores after all four franchises lost money.  Little Caesar then terminated the franchise agreements and sued OPPCO for breach of the franchise agreements.  OPPCO counterclaimed that Little Caesar should be found liable for fraud and breach of contract, and Overhardt sought a rescission of the franchise agreements.  The district court granted Little Caesar summary judgment on OPPCO's fraud claims. Following a bench trial on the merits, the district court held that Overhardt was entitled to a rescission of all four franchise agreements and restitution of the money he spent on the franchises.  Little Caesar and its corporate advertising arm, Little Caesar National Advertising Program ("LCNAP") now appeal the bench trial verdict entered against them.  OPPCO cross appeals, challenging both the district court's decision to grant summary judgment against OPPCO's fraud counterclaims, and the court's refusal to award attorney's fees to OPPCO under South Dakota's Franchise Act.  For the following reasons, we **REVERSE** the district court's summary judgment ruling on the fraud counterclaims, but **AFFIRM** the district court's judgments in all other respects. Accordingly, we **REMAND** the case for further proceedings.

**I.**

Overhardt co-owned several Little Caesar franchises in California from 1983 through 1993, when his co-owner retired. At that time, Overhardt approached Little Caesar about the possibility of purchasing franchises in other parts of the country. In the spring of 1993, Overhardt and Little Caesar engaged in a series of discussions during which Little Caesar encouraged Overhardt to purchase franchises in South Dakota. Overhardt traveled to South Dakota to meet with Little Caesar's real estate manager, Steve Walker, who recommended sites in Brookings and Watertown, South Dakota. These two small towns had Little Caesar franchises operating in local K-Mart stores ("Stations"). However, Walker assured Overhardt that the Stations did not directly compete with a free standing restaurant of the type in which Overhardt was interested. After these discussions, Overhardt decided to purchase the franchises.

During the negotiation period, South Dakota notified Little Caesar that the company's license to sell franchises in that state would soon expire. However, Little Caesar did not act to renew its registration status and, on April 30, 1993, lost its license to offer or sell franchises in the state. Overhardt was unaware of Little Caesar's registration status and Little Caesar did not disclose this information.

At the suggestion of Little Caesar's financial analyst, Overhardt formed OPPCO as a limited liability company and purchased the Watertown and Brookings franchises through OPPCO in the summer of 1993. At about the same time, Little Caesar also suggested that OPPCO purchase two additional franchises in Yankton and Aberdeen, South Dakota. Another Little Caesar franchisee, Pinnacle Pizza ("Pinnacle"), already operated these restaurants. Pinnacle was not financially successful and Little Caesar was concerned as to whether Pinnacle could continue to make the required franchise payments. However, Walker assured Overhardt that Pinnacle's lack of success was due to poor management.

Little Caesar facilitated OPPCO's purchase of the Yankton and Aberdeen franchises in September 1993.

Little Caesar and OPPCO executed a separate agreement for each of the four franchises. Under each agreement, OPPCO acquired the right to own and operate a Little Caesar franchise, including the right to use the "Little Caesar" name, trademark, and trade secrets. OPPCO also agreed to pay royalty fees to Little Caesar and advertising fees to LCNAP. In addition, OPPCO agreed to purchase spices and dough from Little Caesar's approved distributor, Blue Line Distributing, Inc. ("Blue Line").

OPPCO operated the four South Dakota franchises for approximately 18 months. During that time, three of the restaurants suffered from competitive advertising by the nearby K-Mart Pizza Stations, and Overhardt protested to Little Caesar. Ultimately only the franchise that was not located near a K-Mart Pizza Station was profitable, and OPPCO fell behind in its debt payments. In April 1995, Overhardt wrote to Little Caesar expressing his frustration and requesting that it take remedial action. Specifically, Overhardt stated his belief that Little Caesar was not supporting him, requested that Little Caesar take over his operation and make him whole, and indicated his willingness to consider other creative solutions. When no further action was taken, Overhardt informed Little Caesar in a letter dated June 7, 1995, that he was closing the four franchises. Little Caesar then terminated the franchise agreements effective June 27, 1995.

Little Caesar and LCNAP jointly sued OPPCO in June 1995 for non-payment of debts, abandonment of the franchises, and breach of the franchise agreements. Seeking a rescission of each franchise agreement, OPPCO counterclaimed on several grounds: fraud, breach of contract, and tortious interference under Michigan law; fraud and other violations of South Dakota's Franchise Act; and franchise violations arising under Federal Trade Commission ("FTC")

---

increase the award of damages to an amount not to exceed three times the actual damage sustained.

S.D. CODIFIED LAWS § 37-5A-85 (emphasis added). The language of this provision, authorizing that a suit "*may be*" brought to recover damages, costs, and attorney's fees, indicates that the court retains discretion to award attorney's fees. The district court denied OPPCO's request based on its determination that Little Caesar's actions were not vexatious or unconscionable and because OPPCO bore some of the blame for failing to investigate the feasibility of the franchises. More importantly, the court found that the basis of rescission, namely Little Caesar's failure to register in South Dakota, was unrelated to the failure of the franchises. Striving to compensate OPPCO for the Franchise Act violations and to remain consistent with South Dakota public policy, the court concluded that an award of attorney's fees was inappropriate because it would unduly penalize Little Caesar. We cannot conclude that the district court's reasoning reflects a clear error of judgment. The court therefore did not abuse its discretion when it denied OPPCO's request for attorney's fees. On remand, however, the district court may reconsider the issue of attorney's fees in the event that OPPCO prevails on its fraud counterclaims.

## IV.

In conclusion, for the aforementioned reasons we **REVERSE** the district court's summary judgment ruling on OPPCO's fraud counterclaims and **REMAND** the counterclaims for trial; and **AFFIRM** the district court's judgments in all other respects.

franchises, the royalty fees, the advertising fees, and the profits received by Little Caesar for the required purchases of spices and dough" as well as "the amount of profits received by Little Caesar through Blue Line on supplies bought by OPPCO after Blue Line became a subsidiary of Little Caesar" on January 31, 1994. J.A. at 106 (footnote omitted).

### D.

Finally, we uphold the district court's decision not to award attorneys' fees to OPPCO. The denial of a request for attorneys' fees is reviewed for an abuse of discretion. *See Pierce v. Underwood*, 487 U.S. 552, 559 (1988); *Damron v. Commissioner of Soc. Sec.*, 104 F.3d 853, 855 (6th Cir.1997). A court abuses its discretion when it "relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard." *United States v. Hart*, 70 F.3d 854, 859 (6th Cir. 1995). This Court must not overturn the district court's ruling unless it has a "definite and firm conviction that the trial court committed a clear error of judgment." *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998).

OPPCO argues that the district court had no discretion to deny an award of attorney's fees once it concluded that Little Caesar had violated the Franchise Act. We disagree. A person who violates the South Dakota Franchise Act "shall be liable to the franchisee or subfranchisee who may sue for damages caused thereby, for rescission, or other relief as the court may deem appropriate." S.D. CODIFIED LAWS § 37-5A-83. This language indicates that it is mandatory that a person who violates the statue be found liable. However, according to another provision of the statute:

> Any suit authorized under § 37-5A-83 *may be* brought to recover the actual damages sustained by the plaintiff together with costs and disbursements plus reasonable attorney's fees, and the court may in its discretion

regulations. The district court granted Little Caesar's summary judgment motion on OPPCO's three Michigan law counterclaims. In a subsequent ruling, the district court granted summary judgment in favor of Little Caesar on OPPCO's FTC franchise violation and South Dakota fraud counterclaims. At that point, OPPCO's remaining counterclaim alleged that Little Caesar violated the registration requirements of South Dakota's Franchise Act. Following a bench trial,[1] the district court ruled in favor of OPPCO, finding that Little Caesar violated South Dakota's Franchise Act, that OPPCO met the requirements for rescission, and that OPPCO was entitled to $135,059 in restitution. Both sides now appeal.

### II.

We review the district court's conclusions of law following a bench trial *de novo* and its findings of fact for clear error. *See* Fed. R. Civ. P. 52(a). We review summary judgment decisions *de novo* using the same Rule 56 standard applied by the district court. *See Barrett v. Harrington*, 130 F.3d 246, 251 (6th Cir. 1997). Under that standard, a motion for summary judgment should be granted if the evidence demonstrates that there is no genuine issue as to any material fact, and that the movants are entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*,

---

[1]The district court framed the trial issues before it as follows:

(1) whether Little Caesar violated the South Dakota Franchise Statute . . . in its involvement with any of the four franchises operated by Defendant; (2) whether the Court should grant Defendant rescission of the Agreements for any proven violation of the [Franchise] Statute; (3) what amount of restitution would be appropriate if rescission were granted; (4) whether Defendant is liable for breach of the Agreements; and (5) what amount of damages would compensate Plaintiffs for any proven breach.

J.A. at 70.

477 U.S. 242, 247 (1986). The court must read the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. The court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

### A.

OPPCO argues that its Michigan common law fraud claim should have survived summary judgment because Little Caesar's misrepresentations constitute, as a matter of law, more than mere opinion or "puffing." To plead a fraud claim under Michigan law, a plaintiff must allege that: (1) the defendant made a material representation; (2) the representation was false; (3) at the time the representation was made, it was either known to be false, or made recklessly without any knowledge of its truth; (4) the representation was made with the intention that it should be acted on by plaintiff; (5) plaintiff, in fact, acted in reliance on it; and (6) plaintiff suffered damages as a result. *See H.J. Tucker & Assoc., Inc. v. Allied Chucker & Eng'g Co.,* 595 N.W.2d 176, 187 (Mich. Ct. App. 1999) (citing *Hi-Way Motor Co. v. International Harvester Co.,* 247 N.W.2d 813 (Mich. 1976)). Mere exaggeration is not actionable as fraud. *See VanTassel v. McDonald Corp.,* 407 N.W.2d 6, 8-9 (Mich. Ct. App. 1987)(classifying as non-actionable 'puffing' a "salesmen's talk in promoting a sale" and similar "hype . . . beyond objective proof").

it was entitled to a rescission. Accordingly, it filed a counterclaim.

A party rescinding a franchise agreement must "restore to the other party everything of value which he has received from him under the contract, or . . . offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do so." S.D. CODIFIED LAWS §53-11-5. OPPCO made this "tender of value," offering to forego any profits for its two years of work if Little Caesar would assume the operation and restore his investment. Had Little Caesar accepted the offer, OPPCO would have been restored to its pre-agreement position. Any value received would have necessarily been restored because OPPCO would not have retained any profits during nearly two years of operation. Thus, the district court properly determined that OPPCO was entitled to rescission of its four franchise agreements.[4]

### C.

Next, we uphold the district court's award of restitution to OPPCO. The Franchise Act provides the court with the authority to grant the relief it deems appropriate. S.D. CODIFIED LAWS § 37-5A-83. Regarding the amount of restitution to which OPPCO is entitled, we agree with the district court that the objective is to "restore the payments made by OPPCO under the [four franchise] [a]greements and to avoid unjust enrichment." J.A. at 106. Thus, the district court correctly awarded $135,059 to OPPCO, an amount which reflects the company's payment "for the four

---

[4] We also find for the reasons stated by the district court that: (1) OPPCO is entitled to a rescission even if it cannot show harm resulting from Little Caesar's failure to register; (2) the "mistake of fact" and "reasonable diligence" doctrines are not controlling; (3) OPPCO did not commit acts which waived the rescission defense, or were inconsistent with that defense; and (4) the "unclean hands" doctrine is no bar to OPPCO's recovery.

law.  Moreover, we find that Little Caesar offered and sold the Watertown franchise in South Dakota because although OPPCO was not yet incorporated in the state at the time the franchise was sold, the company had competed and filed its incorporation application.  Concerning the Yankton and Aberdeen franchises, the record shows that Little Caesar, not Pinnacle, was the party to "offer or sell" the franchises within the meaning of the Franchise Act.  Specifically, Little Caesar's financial analyst, Matthew Greenough, encouraged Overhardt to purchase the franchises; Greenough was instrumental in arranging for Merrill Lynch Financial Services to lend OPPCO an additional $120,000 to acquire the two franchises; and Greenough strategized with Overhardt on the proper price to pay for the two franchises.  Another Little Caesar employee, Mark Laramie, a regional vice president, acted as a "go-between," and asked Pinnacle if they would consider selling the Yankton and Aberdeen franchises to Overhardt. Moreover, Robert Mazziotti, another Little Caesar regional vice president, negotiated with Pinnacle, on behalf of Overhardt, in an unsuccessful effort to establish a partnership between Pinnacle and Overhardt.  Consequently, the district court correctly found that Little Caesar violated the Franchise Act because the company offered and sold franchises to OPPCO in South Dakota despite the fact that it did not have a license to do so at the time.

**B.**

We further agree with the district court  that rescission of the four franchise agreements was the appropriate remedy. To be entitled to a rescission of its agreements under South Dakota law,  OPPCO must demonstrate: (1) that it acted promptly, *see Knudsen v. Jensen,* 521 N.W.2d 415, 420 (S.D. 1994), and (2) that it restored, or offered to restore, the value of what it received, *see* S.D. CODIFIED LAWS §53-11-5. OPPCO meets the first requirement because OPPCO was not aware of South Dakota's franchise registration requirement until after Little Caesar and LCNAP brought suit.  Thereafter, OPPCO investigated the matter, and promptly determined that

OPPCO bases its fraud counterclaims on the representations of Little Caesar's real estate manager, Steve Walker.  In an effort to convince Overhardt to purchase one or more of the four South Dakota franchises – franchises that potentially competed with nearby Little Caesar franchises located in K-Mart stores -- Walker claimed that the K-Mart pizza franchises would not compete with OPPCO because those franchises target in-store customers only.  Walker also told Overhardt that the K-Mart Stations would enhance, not hurt, the overall performance of his franchises, and that poor management was the cause of Pinnacle's poor performance.

We disagree with the district court's conclusion that under Michigan law, even if Walker's statements somehow go beyond the accepted definition of "puffing," the statements are still not actionable as fraud because they constitute, at most, Walker's legitimate opinion as to how the Stations might serve as competition to OPPCO in the future.  *See Hi-Way Motor Co. v. International Harvester Co.*, 247 N.W.2d 813 (Mich. 1976)("An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact.  Future promises are contractual and do not constitute fraud.").  Of course, any statement regarding whether the Stations would continue to compete with the franchises in the future would be speculative.  However, Walker's representation that the K-Mart Stations did not compete referred to past, current, and future events.

We are further persuaded by OPPCO's argument that the following facts support a finding that Walker's representations did not merely reflect his opinion: (1) Walker was a man with specialized knowledge and authority performing within the scope of his employment; (2) Overhardt did not possess the same specialized knowledge as the speaker, evidenced by the fact that he did not have any prior experience dealing with K-Mart Stations while he was a Little Caesar franchisee in California; and (3) the statements were specific and capable of  verification – OPPCO argues

that if the representation were truly an opinion, one would be unable to verify the truth or accuracy of the statement.

Resolving these inferences in favor of OPPCO, we find that a reasonable factfinder could conclude that Walker's representations were statements of economic fact and market conditions rather than mere opinion. We therefore conclude that the district court improperly granted summary judgment on OPPCO's common-law fraud claim because there is a genuine issue as to whether Walker's statements were representations of fact or mere opinion.[2]

### B.

OPPCO also claims that the district court erred in granting summary judgment against OPPCO on its Franchise Act fraud claim. Section 43 of the Franchise Act provides:

No person may offer or sell a franchise in this state by means of any written or oral communication which includes an untrue statement of a material fact. . . .

S.D. CODIFIED LAWS §37-5A-43. Section 83 of the Franchise Act creates a private right of action for violations of the above provision:

A person who violates [§43 of this Act], shall be liable to the franchisee . . . for rescission, or other relief as the court may deem appropriate.

S.D. CODIFIED LAWS §37-5A-83.

---

[2]We also reject Little Caesar's contention that the statements were not false. The record indicates that at the time Walker made the statements, Little Caesar was on notice that the K-Mart Stations directly competed with the other franchises. It had received 60 complaint letters regarding the issue, and in 1991 had instituted a policy of not locating a K-Mart station within one mile of a franchise. There is therefore a genuine issue as to whether Little Caesar knew that the representations were false at the time Walker made them.

OPPCO argues that Little Caesar violated § 43 of the Franchise Act when Walker represented to Overhardt that K-Mart franchisees did not compete with other Little Caesar franchisees because the K-Mart Stations target in-store shoppers only. For the reasons discussed previously on the fraud claim under Michigan law, we hold that the district court erred in granting summary judgment because there is a genuine issue as to whether Walker's statements constituted his "opinion" as opposed to material misrepresentations designed to induce OPPCO to purchase the franchises.

### III.

We affirm, however, the remainder of the district court's judgment. We find no error in the district court's analysis and conclusions that Little Caesar violated the Franchise Act and that OPPCO was entitled to rescission of the four franchise agreements and the money it paid for the franchise. Moreover, the district court did not abuse its discretion in denying OPPCO's request for an award of attorneys' fees.

### A.

Little Caesar argues on appeal that the district court erred in finding that it violated South Dakota's Franchise Act. That statute prohibits, with certain exceptions, unregistered persons from offering or selling franchises in South Dakota, and provides a cause of action against those who violate the prohibition. S.D. CODIFIED LAWS §§ 37-5A-1 *et seq.*[3] The district court correctly concluded that because Little Caesar did not object on motion for summary judgment to OPPCO's argument that the Brookings franchise was sold in violation of the Franchise Act, that issue was undisputed as a matter of

---

[3]The prohibition is stated as follows: "No person may offer or sell any franchise in this state unless there is an effective registration statement on file in accordance with the provisions of this chapter or unless the franchise transaction is exempted under §§37-5A-11 to 37-5A-14, inclusive." S.D. CODIFIED LAWS § 37-5A-6.