STAR INSURANCE COMPANY, a Michigan corporation, and Savers Property & Casualty Insurance Company, a Missouri corporation, Plaintiffs,

v.

UNITED COMMERCIAL INSURANCE AGENCY, INC., an Arizona corporation, Defendant,

v.

MEADOWBROOK INSURANCE GROUP, INC., Third–Party Defendant.

No. 04–72289.

United States District Court, E.D. Michigan, Southern Division.

Sept. 30, 2005.

**928**

Gerard V. Mantese, Mark C. Rossman, Mantese and Associates, P.C., Troy, MI, for United Commercial Insurance Agency, Inc.

Michael J. Barton, Aaron B. Kendal, Plunkett & Cooney, P.C., Bloomfield Hills, MI, for Star Insurance Company, Savers Property & Casualty Insurance Company, and Meadowbrook Insurance Group, Inc.

OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR LEAVE TO AMEND COUNTER-COMPLAINT, THIRD PARTY COMPLAINT (DKT.# 23)

PEPE, United States Magistrate Judge.

Defendant's motion to amend its counter-complaint/third-party complaint was referred to the undersigned for hearing and determination pursuant to 28 U.S.C. 636(B)(1)(a). Following a telephonic hearing and a review of the parties briefs, and for the reasons stated below, IT IS ORDERED that Defendants motion is GRANTED.

Defendant requests leave to amend its counter-claim/third-party complaint to remove claims for negligence and good faith/fair dealing and add counts for fraud, conversion and for an accounting. Plaintiffs and Third–Party Defendant only object to the addition of the fraud counts—they argue (a) that the amendment comes too late, due to the fact that the parties will be prejudiced if Defendant is allowed to add the claim now that facilitation has already started and the final witness lists have already been exchanged and (b) the claim is futile because Michigan law precludes fraud claims from being raised where, as here, there is an underlying contract at issue with an integration or merger clause.

It is undisputed by the parties that any prejudice the Plaintiffs and Third–Party Defendant may face from being forced to defend against a newly added fraud claim can be remedied by an extension of the scheduling order in this matter. Therefore, the main point of contention is whether Defendant's fraud claims are defeated by the fact that contracts between the parties contain merger clauses which purport to limit the terms of the parties' agreements to the terms contained therein.

■ It is true that a merger clause can be worded so as to preclude a party to a contract from bringing forth evidence of prior or even contemporaneous collateral *agreements* between the parties to the contract, even when such agreements were allegedly an inducement for entering into the contract. *UAW–GM Human Resource Center v. KSL Recreation Corp.,* 228 Mich.App. 486, 502, 579 N.W.2d 411 (1998). In the *UAW–GM* case, the representation was that the hotel had all union employees. Yet, Defendant in the present case has not alleged that there were collateral agreements between the parties in this matter outside of the parties' written contracts. Defendant has alleged that Plaintiffs and Third–Party Defendant made fraudulent misrepresentations which induced it to enter into the contract in the first instance and to remain in the contract instead of exercising the termination option.

■ There is an important distinction between (a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings

between two parties that are not expressed in a written contract. It is only the latter that are eviscerated by a merger clause, even if such were the product of misrepresentation. It stretches the *UAW–GM* ruling too far to say that any pre-contractual factual misrepresentations made by a party to a contract are wiped away by simply including a merger clause in the final contract. Such a holding would provide protection for disreputable parties who knowingly submit false accountings, doctored credentials and/or already encumbered properties as security to unknowing parties as long as they were savvy enough to include a merger clause in their contracts. In fact, the *UAW–GM* court considered the effect of fraud allegations on a contract with a merger clause and determined that evidence was admissible to prove fraud that would "invalidate the merger clause itself, i.e., fraud relating to the merger clause *or fraud that invalidates the entire contract including the merger clause.* 3 Corbin, Contracts, § 578." *Id.* at 503. Further, the section of *Corbin On Contracts* cited by *UAW–GM,* § 578, states that a merger clause "even though it is contained in a complete and accurate integration does not prevent proof of fraudulent misrepresentations by a party to the contract, or of illegality, accident or mistake." 6 Corbin, Contracts, § 578, p. 114 (reprinted as published in the 1960 edition of Volume 3). *Corbin* goes on to explain

> Fraud in the inducement of assent ... may make the contract voidable without ... showing that the writing was not agreed on as a complete integration of its terms. In such case the offered testimony may not vary or contradict the terms of the writing, although it would be admissible even if it did so; *it merely proves the existence of collateral factors that have a legal operation of their own,* one that prevents the written contract

from having the full legal operation that it would otherwise have had. This is not varying or contradicting the written terms of agreement, although it does vary or nullify in part their legal effect.

3 Corbin, Contracts § 580, p. 142 (emphasis added).

In sum, the *UAW–GM* court did not bar a fraud claim in all cases in which the underlying contract has a merger clause, the court simply held that in that case the "plaintiff made no allegations of fraud that would invalidate the contract or the merger clause." *Id.* at 505. The question then is, when does fraud invalidate an entire contract, and when is it such that it provides no remedy or recourse if there is a written contract with a merger clause?

 The Restatement 2nd of Contracts explains that if, "a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient." REST. 2D CONTR. § 164. The answer to the question posed is, therefore, fraud will invalidate a contract when a party's assent to said contract is induced through *justified* reliance upon a fraudulent misrepresentation. A merger clause can render reliance unjustified as to agreements, promises or understandings related to performances that are not included in the written agreement.

 The key element in cases involving a merger clause is whether one justifiably relied on the representations of another when the parties' written agreement clearly stated that by signing the document they were agreeing that the document made up the parties' entire agreement regarding the terms of the contract and its performance standards. The Michigan courts have said that, as it pertains to representations regarding additional

agreements or contractual terms, a party would not be justified in relying on them where there is a merger clause. The reasoning behind this is clear, one should not be heard to complain that they relied on oral promises regarding additional or contrary contract terms when there is written proof, signed by both parties, to the contrary. Yet, a party could still justifiably rely upon representations made by another party regarding things outside the scope of the contractual terms, such as the other party's solvency, indebtedness, experience, clientele, client retention rate, business structure, etc. If these representations are false when they are made, not merely opinion and not future promises, they could constitute fraud in the inducement. *Kamalnath v. Mercy Memorial Hosp. Corp.*, 194 Mich.App. 543, 554–555, 487 N.W.2d 499 (1992).

Plaintiff has referred the undersigned to three unpublished opinions in support of its position that any pre-contractual representations were wiped away by the merger clause, two Michigan state cases and one Eastern District of Michigan case. In *Doty, et. al. v. Bradley, et. al.*, 2003 WL 22956401, 2003 Mich.App. LEXIS 3251 (2003)(**Exhibit A**), the Michigan Court of Appeals ruled that plaintiffs were unjustified in their reliance on defendants' alleged promises that plaintiffs would "own their own business and be their 'own boss'...examine and turn down accounts... receive more than is required by the contract...receive assignments close to home" and would receive assistance with lost account replacement. *Id.* at 2003 WL 22956401, 2003 Mich.App. LEXIS 3251, *6. This case is distinguishable from the present case because the "alleged misrepresentations were explained, contradicted or superseded by the written terms of the franchise agreements and the merger and integration clause," in that the alleged misrepresentations all re-lated to additional or different contractual terms and future performance standards. *Id.* at 2003 WL 22956401, *3, 2003 Mich. App. LEXIS 3251, *10. The *Doty* court held that "because the franchise agreements contain clauses that address the particular statements allegedly made to induce plaintiffs to sign the agreements *and* because the agreements contain clear merger and integration clauses...it was unreasonable for plaintiffs to rely on alleged outside representations." *Id.* at 2003 WL 22956401, *3, 2003 Mich.App. LEXIS 3251, *12 (emphasis added) (citations omitted). In the present case, as explained above, Defendant is not attempting to introduce new or different contract terms but is alleging collateral factors that have a legal operation of their own.

*Fleet Business Credit v. Krapohl Ford Lincoln Mercury et. al.*, 2004 WL 2179235, 2004 Mich.App. LEXIS 2548 (2004)(**Exhibit B**) is distinguishable for the same reason. In *Fleet*, the court ruled that the defendant could not have justifiably relied upon the third-party defendant's alleged representations regarding the capacity of the software at issue to interface with the defendant's existing software because this was not a term of the contract and the contract had a merger clause. *Id.* at 2004 WL 2179235, *2–3, 2004 Mich.App. LEXIS 2548, *7–8. Here again the alleged misrepresentation dealt with an unspecified performance standard. Because the *Fleet* court felt that the relief the defendant was requesting would require a variance to the terms of the integrated contract at issue, relief was denied as contrary to Michigan law. *Id.* (citing *UAW–GM*). While the undersigned is not entirely convinced that the *Fleet* court correctly utilized the *UAW–GM* holding, given the way in which it quoted *UAW–GM*, and, as such, understands why Plaintiff would argue that the opinion supports its position, it is never-

theless distinguishable on its facts since product performance is certainly a term one would expect to be integrated into a contract, unlike the facts Plaintiff is alleging were misrepresented to it here by Third–Party Defendant. It is not too much to expect contracting parties to include in their contracts all performance factors of the product at issue, it is too much to expect them to anticipate all representations which may have been taken into consideration when deciding whether are not to enter into a contract with the other party in the first place and include those in the contract.

Last is *Smoracy v. Cook,* Case. No. 02–10103, 2002 WL 2031385, 2002 U.S. Dist. LEXIS 16637 (E.D.Mich. Aug. 31, 2002)(**Exhibit C**), in which Judge Lawson accepted Magistrate Judge Binder's Report and Recommendation (**Exhibit D**) dismissing the plaintiff's misrepresentation claims due to the existence of a merger clause in the parties' contract. The factual allegations in the *Smoracy* complaint are more similar to the present case than were the Michigan state cases. The *Smoracy* plaintiff alleged that the defendant misrepresented his knowledge of the market, the fact that he already had committed purchasers for he product and another outstanding offer, the experience of those working with him, and the adaptability of the product at issue (Case. No. 02–10103, Dkt.# 1). The Report and Recommendation in *Smoracy,* relied on the *UAW–GM* opinion in holding that any representations made by defendant were "nullified" by the contract's integration clause and, therefore, could not even be considered by the court (**Exhibit D**, p. 13). This reading of *UAW–GM* is too broad, and would only hold true had the representations at issue in *Smoracy* been solely about contractual terms or performance standards, as the experience of the workers and the product's adaptability to the contract needs

were. Instead, as is the case here, the defendant in *Smoracy* allegedly made additional misrepresentations outside of the contractual terms and performance standards, misrepresentations which allegedly induced the other party to the contract even to engage in the contract negotiations. The *Smoracy* case seems to ignore the fact that *UAW–GM* specifically reserved the cause of action for fraud which nullifies the entire contract. It seems to have interpreted *UAW–GM* as a complete ban to any fraud claims in contract cases involving an integration or merger clause. This reads *UAW–GM* too broadly.

For the reasons stated above, Defendant's motion is GRANTED.

So ORDERED.