NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0094n.06

No. 12-2023

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 04, 2014
DEBORAH S. HUNT, Clerk

RAM INTERNATIONAL, INC. D/B/A/ RAM )
CREATIONS, A MICHIGAN CORPORATION; )
NARENDER AGARWAL, AN INDIVIDUAL, )
                                                      )
    Plaintiffs-Appellants, )
                                                      )
v.                                                    )
                                                      )
ADT SECURITY SERVICES, INCORPORATED, )
                                                      )
    Defendant-Appellee. )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

**O P I N I O N**

BEFORE:     COLE, KETHLEDGE and STRANCH, Circuit Judges

COLE, Circuit Judge. Plaintiffs-Appellants Ram International, Inc. and Narendar Agarwal

("Ram") appeal the district court's order dismissing their complaint against Defendant-Appellee

ADT Security Services, Inc. alleging negligence, fraud, and false advertising. Additionally, Ram

appeals the court's determination that a limitation-of-liability clause contained in its sales agreement

with ADT caps Ram's damages for breach of contract. For the reasons stated below, we affirm.

**I. BACKGROUND**

**A. Factual Background**

Ram owns and operates a jewelry and collectibles store in Michigan. On July 11, 2008, Ram

entered into an agreement with ADT by which ADT would provide Ram with certain security

services in exchange for a one-time fee and an annual service fee. Among other services specified

in the contract, ADT agreed to provide a "Central Station Signal Receiving and Notification Service." The agreement explained, "in the event an alarm signal registers at ADT's Central Station, ADT shall endeavor to notify the appropriate Police or Fire Department and the designated representative of the Customer." The contract also listed particular components to be installed and services to be provided, including equipment compatible with a "line security" system and a note indicating that ADT would "Upgrade UL Certificate to Include Line Security." As Ram's complaint indicates, "line security" is a feature allowing a security system to detect an intruder's attempt to disable the system by, for example, cutting the customer's telephone wires. The agreement contained a number of limiting clauses, including one pertaining to ADT's liability in case of loss:

> The customer does not desire this contract to provide for full liability of ADT and agrees that ADT shall be exempt from liability for loss, damage, or injury due directly or indirectly to occurrences, or consequences therefrom, which the service or system is designed to detect or avert, that if ADT should be found liable for loss, damage, or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $1,000, whichever is greater, as the agreed upon damages and not as a penalty, as the exclusive remedy . . . .

The agreement also included a merger or integration clause:

> This agreement constitutes the entire agreement between the customer and ADT. In executing this agreement, customer is not relying on any advice or advertisement of ADT. Customer agrees that any representation, promise, condition, inducement or warranty, express or implied, not included in writing in this agreement shall not be binding upon any party . . . .

In addition to the agreement, ADT provided Ram with a separate document, a "UL [Underwriters Laboratories] Certificate," certifying that ADT is "qualified to use the UL Listing Mark in

connection with its certificated Alarm System" and that the system "has been installed and will be maintained in compliance with requirements established by UL."

On July 14, 2010, shortly after midnight, plaintiffs' store was burglarized. Security camera footage showed three masked individuals ransacking the store. Although a store employee had activated the alarm while closing up earlier that evening, ADT did not inform Agarwal or any other party of the burglary, nor did ADT itself respond. The burglary was not discovered until several hours later, when an employee opened the store for business in the morning. Upon investigating, police found that the phone lines had been cut on the exterior of the building. About one million dollars worth of merchandise had been stolen.

Two months after the burglary, on September 15 and 16, 2010, Agarwal received three calls from ADT pertaining to erroneous signals that had been sent from the store to ADT's system. An ADT representative informed Agarwal that the alarm system was "coded wrong" and then fixed the problem. At that point, Agarwal asked ADT to send him its data logs. ADT did so, but did not send logs pertaining to the night of the burglary. ADT did, however, issue two "service tickets" dated July 14, 2010 and July 17, 2010. These documents recorded the presence of alarm signals and/or communication failures, indicative of an "alarm condition" or a break-in, shortly after midnight on July 14, 2010, the night of the burglary.

## B. Procedural History

Plaintiffs filed suit in the Sixth Judicial Circuit Court of Oakland County, Michigan alleging negligence, fraudulent misrepresentation, false advertising, and breach of contract. Defendant ADT

removed the case to the United States Court for the Eastern District of Michigan. ADT moved for judgment on the pleadings, and the parties then stipulated to Ram's request to amend its complaint.

Ram's amended complaint alleged that ADT had committed negligence or gross negligence by installing a poorly designed alarm system, by failing to install the line security feature, and by failing to protect the store or alert police on the night of the burglary; had breached the UL Certificate by failing to install and maintain equipment in compliance with UL standards; and had engaged in fraud, fraudulent misrepresentation, and false advertising in its statements pertaining to the reliability and operation of its alarm system. ADT moved to dismiss on the basis of plaintiffs' failure to state a claim.

Following a hearing, the district court issued an order dismissing all of Ram's claims except its breach of contract claim per Rule 12(b)(6). However, the court held that the Agreement's liquidated damages clause would limit Ram's damages to $1,000. Additionally, although Ram brought claims for the breach of two distinct contracts—first, the sales agreement between Ram and ADT, and second, the UL Certificate certifying that Ram's security system complied with UL standards—the district court held that the parties had entered into only one contract, as the subsequent document did not impose any new obligations on the parties. Ram did not appeal this particular finding.

The parties entered into a final stipulation to dismiss on July 12, 2012, pursuant to *Raceway Properties, Inc. v. Emprise Corp.*, 613 F.2d 656, 657 (6th Cir. 1980) (per curiam) (holding appealable a case dismissed "in effect" by the district court's order). The plaintiffs filed a notice of appeal on August 6, 2012. This Court has jurisdiction under 18 U.S.C. § 1291.

## II. DISCUSSION

### A. Standard of Review

This Court reviews de novo a district court's dismissal of a plaintiff's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Kottmyer v. Maas*, 436 F.3d 684, 688 (6th Cir. 2006). This Court will dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Id.* (quotation omitted). While we must "accept as true all the allegations contained in the complaint and construe the complaint liberally in favor of the plaintiff," we are not required to "accept as true legal conclusions or unwarranted factual inferences." *Id.* A complaint must allege facts that "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

Since this Court has jurisdiction due only to the diversity of the parties, we apply the substantive law of Michigan, the forum state, and the procedural rules of the federal courts. *Rupert v. Daggett*, 695 F.3d 417, 423 (6th Cir. 2012). Additionally, because the contract between the parties contains no choice of law provision, Michigan law controls, as Michigan is the "place of contracting, performance, and subject matter of the contract." *Spengler v. ADT Sec. Servs, Inc.*, 505 F.3d 456 (6th Cir. 2007).

### B. Negligence

Under Michigan law, a defendant acting pursuant to a contract is liable in tort only if he or she "owed a duty to the plaintiff that is separate and distinct from the defendant's contractual

obligations." *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 592 (Mich. 2004); *see also Hill v. Sears, Robuck and Co.*, 822 N.W.2d 190, 202 (Mich. 2012); *Hart v. Ludwig*, 79 N.W.2d 895, 898 (Mich. 1956) (tort action can be brought when "a situation of peril has been created, with respect to which a tort action would lie without having recourse to the contract itself"). When the parties have contracted directly, such a duty may arise if one party's conduct "creates a new hazard" resulting from something more than non-performance. *See Fultz*, 683 N.W.2d at 592–93; *see also Hill*, 822 N.W.2d at 202. Some older cases draw a distinction between nonfeasance and misfeasance, finding only the latter to be actionable in tort, but this approach has largely been supplanted by the "separate and distinct" and "new hazard" standards. *See Fultz*, 683 N.W.2d at 592 ("[T]he former misfeasance/nonfeasance inquiry . . . is defective because it improperly focuses on whether a duty was breached instead of whether a duty exists at all.").

Under Michigan law, ADT did not owe Ram a statutory or common-law duty to detect the burglary or dispatch police. *See Spengler*, 505 F.3d at 458 (holding that ADT's failure to dispatch EMS to correct address was not actionable in tort); *see also Hill*, 822 N.W.2d at 196 (no common law duty to aid or protect another). Since *Spengler* was decided, Michigan has not recognized any new or modified duties in tort as applied to parties involved in a direct contracting relationship. *Cf. Loweke v. Ann Arbor Ceiling & Partition, Co.*, 809 N.W.2d 553, 562 (Mich. 2011) (applying the "separate and distinct" legal duty analysis); *Hill*, 822 N.W.2d at 202 (applying the "new hazard" analysis).

Ram argues that, irrespective of ADT's contractual duties, ADT also had a duty to perform its contractual obligations with due care. In support of this claim, Ram points to cases involving

third-party plaintiffs who were injured while the defendant was carrying out its contractual obligations to a different party altogether. *See Loweke*, 809 N.W.2d 553 (construction sub-contractor)*; Davis v. Venture One Constr., Inc.*, 568 F.3d 570 (6th Cir. 2009) (same). These cases, however, establish only that "a contracting party's assumption of contractual obligations does not extinguish or limit separately existing common-law or statutory tort duties *owed to noncontracting third parties*." *Loweke,* 809 N.W.2d at 554 (emphasis added). Although *Loweke* acknowledges a common law duty to perform one's undertakings with due care, it also states that "no tort liability would arise" where a defendant "fail[ed]to fulfill a promise in the absence of a duty to act that is separate and distinct from the promise made." *Id.* at 558 (quotation omitted). Thus, the cases Ram cites do not grant a plaintiff a cause of action in tort based on a common-law duty of due care, when the plaintiff has contracted directly with the alleged tortfeasor.

Because ADT's sole alleged breach of duty was a breach of its contractual obligation to monitor the store, Ram's remedy, too, is contractual. The district court properly dismissed Ram's negligence claim.

## C. Fraudulent Inducement and False Advertising

On appeal, Ram alleges that ADT fraudulently induced Ram to enter into the sales agreement, and engaged in false advertising, by misrepresenting the efficacy of its equipment and services. Because fraud "makes a contract voidable" by the innocent party, if Ram can prove fraud, it may be able to pursue damages, in tort, beyond the liquidated amount specified in its contract with ADT. *See UAW-GM Human Res. Cntr v. KLS Recreation Corp.*, 579 N.W.2d 411, 418 (Mich. Ct. App. 1998). We address the fraud and the false advertising claims in turn, but begin with a threshold

question—whether Ram has pleaded fraud with particularity, as required by the Federal Rules of Civil Procedure.

### i. Sufficiency of Ram's Pleading

Parties litigating in federal court due to diversity must comply with the Federal Rules of Civil Procedure, including Rule 9, which requires a party pleading fraud to "state with particularity the circumstances constituting fraud." F.R.C.P. 9(b). Therefore, although Michigan law governs with respect to the substantive elements of fraud, we first consider whether Ram has met the pleading requirement. *See Minger v. Green*, 239 F.3d 793, 800 (6th Cir. 2001).

To comply with Rule 9(b), "a plaintiff must at a minimum allege the time, place and contents of the misrepresentation(s) upon which he relied." *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir. 1984). Three paragraphs of Ram's amended complaint—filed after ADT moved for Rule 12(b)(6) dismissal—miss the mark, as they convey the general content of ADT's alleged representations, but not the particular time or place that they were made. Paragraph 56 reads, "Defendant through its agent made material representations regarding the reliability of its monitoring services when it first solicited Plaintiffs' business," but the complaint does not state here, or anywhere else, the actual *content* of those "material representations." Paragraph 57 is similarly vague, stating, "Defendant made several misrepresentations through its advertisements and through statements made to Plaintiffs." Paragraph 60 is specific as to the content of ADT's alleged representations, but fails to explain when and where such representations were made—whether in an agreement exchanged between the parties, orally, or by some other means. Although we may consider the sales agreement attached as an exhibit to Ram's amended complaint, *see Bassett*, 528

F.3d at 430, these particular representations do not appear in the agreement. Thus, the allegations addressed above do not comply with Rule 9(b).

In contrast, a separate allegation in the complaint does contain sufficient information to meet the pleading requirement. In paragraph 58, Ram alleges that ADT "made representation about its UL Central Station Burglar Alarm System" in the UL Certificate, "which ADT knew or should have reasonably known . . . were [sic] blatantly false." Paragraph 59 identifies the content of the alleged misrepresentation: that ADT was able to comply with UL standards. This information arguably fulfills Rule 9's requirement that the plaintiff identify the time, place, and content of the misrepresentations, since the complaint supplies additional information pertaining to the UL Certificate. Furthermore, in subsequent paragraphs, Ram properly alleges that the fraudulent statements were false, that ADT knew they were false and intended to induce reliance, and that Ram indeed relied on the statements and suffered damages. *See Bennett v. MIS Corp.*, 607 F.3d 1076, 1100–1101 (6th Cir. 2011) (setting forth requirements for pleading Michigan law fraud claim with particularity).

Ram argues on appeal that if indeed its allegations of fraud are not stated with sufficient particularity, it should be given permission to amend its complaint. The record from the district court shows that Ram had already submitted an amended complaint, and that it did so after ADT had moved for judgment on the pleadings, in part on the argument that Ram had failed to plead fraud with sufficient particularity. Given that Ram had notice, before appealing to this Court, that its pleadings may have been deficient, we are not inclined at this point to give Ram an additional opportunity to amend. *Cf. Roskam Baking Co. v. Lanham Machinery Co.*, 288 F.3d 895, 906 (6th

Cir. 2002) (holding that district court had not abused its discretion in denying plaintiff's motion to amend complaint).

Therefore, Ram's only allegation of fraud that survives Rule 9(b) pertains to ADT's allegedly fraudulent statements in the UL Certificate, which, according to paragraph 59 of the complaint, represented that ADT was able to comply with UL standards.

### ii. Fraudulent Inducement

To bring a successful fraud claim in Michigan, a plaintiff must demonstrate that he or she reasonably relied on the defendant's representations. *See Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 554 (Mich. Ct. App. 1999); *see also MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 663 (6th Cir. 2013) (adopting as the "best authority" *Novak*'s holding that "reliance must indeed be reasonable"). Michigan law further establishes that when a "written contract, with [an] integration clause, expressly contradict[s]" a defendant's allegedly fraudulent representations not contained in the contract, a plaintiff's reliance on such representations cannot be reasonable. *Id.* at 553–54. However, a distinction must be drawn between fraud claims based on "collateral agreements" not expressed in the contract—which a merger clause invalidates—and claims stemming from "representations of fact made by one party to another to induce that party to enter into the contract"—which a merger clause does *not* invalidate. *See Barclae v. Zarb*, 834 N.W.2d 100, 118 (Mich. Ct. App. 2013) (citing and discussing *UAW-GM*, 579 N.W.2d 411).

Ram argues that the merger clause is not a complete defense because "a contracting party's fraud may invalidate the contents of a merger clause" if that party has engaged in "fraud relating to the merger clause or fraud that invalidates the entire contract underlying the merger clause." This

is an accurate statement of the law. *See UAW-GM*, 579 N.W.2d at 419–20; *see also Star Ins. Co. v. United Commercial Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 929–30 (E.D. Mich. 2005) (stating that, although parties "would not be justified in relying on [additional agreements or contractual terms] where there is a merger clause . . . . a party could still justifiably rely upon representations made by another party regarding things outside the scope of the contractual terms, such as the other party's solvency, indebtedness . . . etc.").

However, Ram's allegation of fraud in the inducement cannot succeed for three reasons. First, as addressed above, Ram has failed to plead with particularity its fraudulent inducement claims relating to the sales agreement or to ADT's solicitation of Ram's business before the agreement was signed. Only Ram's fraud claims pertaining to the UL Certificate survive Rule 9(b). Second, Ram's complaint does not contend that ADT's fraudulent misrepresentations pertained to the merger clause itself. And finally, Ram does not claim that any of ADT's fraudulent statements pertained to matters beyond the scope of the sales agreement. *See id.*

The district court, in its order dismissing Ram's fraud claims, held that the UL Certificate was not a "new contract between the parties, but rather carrie[d] out the contract that they already agreed to in the [a]greement." By the court's logic, the Certificate is "merely the written expression of the terms contemplated by the parties when they [included the phrase] 'Upgrade UL Certificate to Include Line Security' in the original [a]greement." Ram does not challenge this holding on appeal, so any argument to the contrary is waived. *See Kuhn v. Washtenaw Cnty*, 709 F.3d 612, 624–25 (6th Cir. 2013). As a result, the merger clause encompasses any representations ADT made

regarding the UL Certificate, which is explicitly mentioned in the agreement as part of the services ADT was to provide to Ram.

In light of the merger clause, Ram cannot successfully argue that it reasonably relied upon oral statements about the UL Certificate in choosing to enter into the agreement. *See Novak*, 599 N.W.2d at 553–54. Nor can Ram claim that the representations contained in the text of the UL Certificate induced it to contract with ADT. Ram did not receive a copy of the UL Certificate until April 2009—several months after it entered into the sales agreement. Moreover, although the sales agreement represented that ADT would install the line security feature to which the UL Certificate pertained, under Michigan law, Ram cannot bring a fraud in the inducement claim for breach of the agreement's terms. *See Uhl v. Komatsu Forklift Co.*, 512 F.3d 294, 304 (6th Cir. 2008) ("fraud in the inducement is not available for a breach of a contract's terms, lest fraud in the inducement claims swallow all breach-of-contract claims . . .") (citing *Huron Tool and Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 546 (Mich. Ct. App. 1995)). For all of the reasons above, we affirm the district court's dismissal of Ram's fraudulent inducement claim.

### iii. False Advertising

Ram alleges that ADT violated Michigan's false advertising statute, which states, "A person shall not knowingly make, publish, disseminate, circulate, or place before the public an advertisement that contains a statement that is untrue, deceptive, or misleading."[1] M.C.L. §

---

[1] As of September 1, 2011, when the Shopping Reform and Modernization Act took effect, the relevant provision is now located at M.C.L § 445.315(5)(1). *See* 2011 Mich. Legis. Serv. P.A. 15 (H.B. 4145) (West).

445.356(6)(1) (2002).  The question of whether an advertisement is deceptive or misleading under the Michigan statute "is to be construed with reference to the common-law tort of fraud." *Overton v. Anheuser-Busch Co.*, 517 N.W.2d 308, 309 (Mich. Ct. App. 1994).  Thus, in false advertising claims, as in fraud claims, statements of opinion or puffery are not actionable.  *Id.*; *see also Van Tassel v. McDonald Corp.*, 407 N.W.2d 6, 8 (Mich. Ct. App. 1987).  Additionally, to prevail on a false advertising claim, the plaintiff's reliance on the deceptive representations must have been reasonable.  *See In re Jackson Nat. Life Ins. Co. Premium Litig.*, 107 F. Supp. 2d 841, 865 (W.D. Mich. 2000) (citing *Novak*, 599 N.W.2d 546, and *Overton*, 517 N.W.2d 308).

Opinion and puffery encompass a "sales[person's] talk in promoting a sale" and statements that serve "to 'hype' [a] product beyond objective proof." *Van Tassel*, 407 N.W.2d at 7–8; *see also Scott v. Harper Recreation, Inc.* 506 N.W.2d 857, 860 (Mich. 1993).  In *Van Tassel*, a fraud case, the purchaser of an ice cream store franchise alleged that the seller of the franchise had induced the purchase through fraudulent misrepresentations.  Among those statements that the court of appeals categorized as opinion or puffery included, "[y]ou won't regret becoming a [franchise] owner" and "there [is] a lot of money to be made," as well as the defendant's repeated characterization of the franchise as a "gold mine." 407 N.W.2d at 8–9.  Some of the alleged representations made by ADT are vague or aspirational in ways similar to the statements addressed in *Van Tassel*, specifically, ADT's boast that it offers "Rapid Alarm response" and its advertisements that, to cite Ram's complaint, "creat[e] an image that translates that their system is reliable and never fails."  Other representations, however, are not so easily dismissed.  Ram also alleges that ADT represented that it would "be there for its clients '24 hours a day, 7 days a week'" and that ADT offers "24 hour

monitoring by ADT trained professionals." In light of ADT's position as a provider of security services—necessitating constant, uninterrupted monitoring of its customers' property—we decline to dismiss these allegations as puffery or opinion.

However, even when a defendant's representations are sufficiently concrete to survive the *Van Tassel* standard, a plaintiff must demonstrate that its reliance on the representations was reasonable. *See In re Jackson*, 107 F. Supp. 2d at 865 (citing *Novak*, 599 N.W.2d 546, and *Overton*, 517 N.W.2d 308, in concluding that false advertising claim requires reasonable reliance). This requirement takes us back to a point raised above: Michigan law maintains that reliance on an allegedly fraudulent representation is not reasonable if the representation is expressly contradicted in a valid merger clause contained in a contract between the parties, unless the plaintiff can make out a claim of fraud in the inducement or fraud pertaining to the merger clause itself. *See Novak*, 599 N.W.2d at 553–54; *UAW-GM*, 579 N.W.2d at 418–19.

While there is no precedent in Michigan directly establishing that a merger clause such as the one present here precludes a false advertising claim, Michigan courts have consistently held that merger clauses preclude fraud claims, with some exceptions, as addressed above. *See, e.g.*, *Barclae*, 834 N.W.2d at 118–19; *UAW-GM*, 579 N.W.2d at 418–19. From the vantage point of a federal court sitting in diversity, we see little evidence to indicate that Michigan courts would deviate from this approach in the context of false advertising. *Cf. In re Jackson*, 107 F. Supp. 2d at 865 (plaintiffs cannot have reasonably relied on advertising material bearing conspicuous disclaimer); *see also Kim v. Kia Motors America*, No. 260071, 2005 WL 839635, at *2 (Mich. Ct. App. Apr. 12, 2005). The merger clause in the parties' sales agreement states explicitly, "Customer is not relying on any

advice *or advertisement* of ADT" (emphasis added). Accordingly, we affirm the district court's dismissal of Ram's false advertising claim.

## D. Breach of Contract and Limited-Liability Clause

Turning finally to contract law, Ram alleges that ADT breached the parties' agreement on the night of the burglary by failing to report the incident to the store's owners or police and by failing to investigate or send its own representative to the premises. The district court did not dismiss the breach of contract claim, finding that a provision in the agreement purporting that Ram would waive all claims against ADT was ambiguous. However, the court also found a limited-liability clause in the agreement valid, capping Ram's damages at $1,000. On appeal, Ram argues that the limited-liability clause does not apply because ADT had engaged in gross negligence.

The sales agreement includes the following language:

> It is understood that ADT is not an insurer . . . . Customer agrees to look exclusively to customer's insurer to recover for injuries or damage in the event of any loss or injury and releases and waives all right of recovery against ADT arising by way of subrogation. . . . The customer does not desire this contract to provide for full liability of ADT and agrees that ADT shall be exempt from liability for loss, damage, or injury due directly or indirectly to occurrences, or consequence therefrom, which the service or system is designed to detect or avert, that if ADT should be found liable for loss, damage, or injury due to a failure of service or equipment in any respect, its liability shall be limited to a sum equal to 10% of the annual service charge or $1,000, whichever is greater, as the agreed upon damages and not as a penalty, as the exclusive remedy. . . .

We look first to the validity of the waiver clause, and then to the limitation-of-liability clause.

### i. Waiver Clause

ADT moved to dismiss Ram's claim for breach of contract on the grounds that the agreement contained a binding risk-allocation clause. The district court denied ADT's motion, reasoning that

the relevant contractual clause was ambiguous because it could be read only to "preclud[e] the right of recovery an insurance company would gain through subrogation." The court also cited the agreement's limited-liability clause as support for its interpretation that the agreement does not bar all damages.

Reviewing Ram's contract claim de novo, we agree with the district court's determination that the sales agreement is ambiguous as to ADT's liability for a breach of contract claim. The agreement purports to shield ADT from all rights arising by means of subrogation, and indeed from all damages for loss and injury; however, in the next phrase, it goes on to note that "if ADT shall be found liable for loss," its liability will be limited to $1,000 or 10% of the annual service charge. "[I]f two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *See Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003). When a contract term is ambiguous, its construction is an issue of fact that should be determined by a jury. *Id.* at 453–54. Because we find the contract ambiguous as to ADT's liability, we affirm the denial of Rule 12(b)(6) dismissal of the breach of contract claim.

### ii. Limited-Liability Clause and Gross Negligence Defense

The sole challenge that Ram raises on appeal to the limited-liability clause is a claim that ADT's actions were grossly negligent and that the damages clause therefore does not apply. Michigan cases clearly establish that, "although a party may contract against liability for harm caused by ordinary negligence, a party may not insulate himself against liability for gross negligence or wilful and wanton misconduct." *See, e.g.*, *Lamp v. Reynolds*, 645 N.W.2d 311, 314 (Mich. Ct. App. 2002). Gross negligence is defined as "conduct . . . so reckless as to demonstrate a substantial

lack of concern for whether an injury result[s]." *Xu v. Gay*, 668 N.W.2d 166, 170 (Mich. Ct. App. 2003).

As discussed above, Michigan law does not recognize a negligence cause of action when a defendant fails to perform its contractual obligations. To bring a negligence claim under these circumstances, a plaintiff must show that the defendant owed the plaintiff a separate and distinct duty not arising solely from the contract, or that the defendant created a "new hazard" through actions other than a mere failure to perform. *See Fultz*, 683 N.W.2d at 592–93. Ram's gross negligence defense to the limitation-of-liability clause thus founders for the same reasons that defeat its ordinary negligence claim. The district court properly dismissed Ram's gross negligence claim and properly applied the limitation-of-liability clause.

### III. CONCLUSION

For the reasons addressed above, we affirm the district court's grant of Rule 12(b)(6) dismissal of Ram's negligence, gross negligence, fraud, and false advertising claims. We also affirm the district court's denial of ADT's motion to dismiss Ram's breach of contract claim, as well as its holding that Ram's damages are limited by the parties' contract. We remand this case to the district court for further proceedings in accordance with this opinion.

STRANCH, Circuit Judge, dissenting.

To uphold the dismissal of this negligence claim, we must conclude that construing the complaint in the light most favorable to Ram and accepting all of Ram's allegations as true, ADT is not even plausibly liable for the misconduct alleged. *See Keys v. Humana*, *Inc.*, 684 F.3d 605, 608 (6th Cir. 2012). The majority finds this standard satisfied by holding that, as a matter of Michigan law, a party to a contract can never be negligent when performing its contractual obligations because no legal duty guides or confines the contracting party's actions. The operative determination of the majority is that when a plaintiff has "contracted directly with the alleged tortfeasor," no common law duty exists. But we have already held otherwise: "[u]nder Michigan common law, the parties to a contract must not only perform in accordance with the express provisions of the agreement but must also perform their obligations with reasonable care." *Moore v. Sky Chefs, Inc.*, 79 F. App'x 130, 134 (6th Cir. 2003). More than one hundred years of Michigan caselaw contradicts the majority's conclusion that no duty to perform a contract with due care can exist. As does the common law across the states in this circuit and across the country.[1] And as does hornbook law.[2] Therefore, I respectfully dissent.

---

[1]*See, e.g.*, *Mead Corp. v. ABB Power Generation, Inc.*, 319 F.3d 790, 795 ("Under Ohio law, '[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract.'") (quoting *Hunsicker v. Buckeye Union Cas. Co.*, 118 N.E.2d 922, 924 (Ohio 1953)); *Federal Ins. Co. v. Winters*, 354 S.W.3d 287, 292 (Tenn. 2011) (quoting nearly identical language and citing cases from multiple jurisdictions); *Sparks v. Re/Max Allstar Realty, Inc.*, 55 S.W.3d 343, 346–47 (Ky. Ct. App. 2000).

[2]Recognizing that a contractual undertaking may also include a duty to exercise reasonable care that gives rise to a tort action. *See* 57A Am. Jur. 2d Negligence § 110; Dobbs' Law of Torts § 410 (2d ed.); Restatement (Second) of Torts § 323.

I begin with the clear consensus in Michigan law recognizing the existence of such a duty. In *Chase v. Clinton County*, a suit between the parties to a contract that also involved a tort claim, the Michigan Supreme Court stated: "Accompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." 217 N.W. 565, 567 (Mich. 1928) (quotation omitted). In *Hart v. Ludwig*, which also involved a negligence claim between the parties to a contract, the Michigan Supreme Court stated as "correct" the principle that "[t]he law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty an action lies." 79 N.W.2d 895, 898 (Mich. 1956) (quotation omitted).

Chase and *Hart* are notable because they are especially quotable (and rather frequently quoted), not because they stand alone—they are in crowded company. This duty to exercise due care in one's contractual undertakings did not spring into existence in 1928. *Smith v. Holmes*, 19 N.W. 767 (Mich. 1884), involved a suit between the parties to a contract that included a tort claim arising out of the contract. In *Smith*, the Michigan Supreme Court stated, "[a]t all events, if he entered into a contract with the plaintiff . . . then the law implied an undertaking from him . . . and that he would use due and ordinary care in the performance of his duty to the plaintiff in that respect." 19 N.W. at 769. Nor did the duty disappear after 1956. Just last year, the Michigan Supreme Court stated that "[e]very person engaged in the performance of an undertaking has a duty to use due care." *Hill v. Sears, Roebuck and Co.*, 822 N.W.2d 190, 196 (Mich. 2012). *Hill*, too,

involved a tort claim arising from a contractual relationship brought by one contracting party against the other.

These cases fall within the "traditional rule" that "privity of contract is required before a cause of action in tort can arise from a breach of duty existing by virtue of contract." 57A Am. Jur. 2d Negligence § 114. The confusion surrounding this principle in the majority opinion appears to grow from the rule in Michigan that a *third party* in some cases also has a cause of action arising out of a contracting party's negligent performance of her contractual duties. *See, e.g.*, *Loweke v. Ann Arbor Ceiling & Partition Co., L.L.C.*, 809 N.W.2d 553, 562 (Mich. 2011). It should not be surprising that the duty to use due care in one's undertakings applies in the third-party context as well. *See, e.g.*, *id.* at 560 ("As this Court has historically recognized, a separate and distinct duty to support a cause of action in tort can arise by . . . the generally recognized common-law duty to use due care in undertakings."); *Fultz v. Union-Commerce Assocs.*, 683 N.W.2d 587, 591 ("If one voluntarily undertakes to perform an act, having no prior obligation to do so, a duty may arise to perform the act in a nonnegligent manner."); *Clark v. Dalman*, 150 N.W.2d 755, 760 (Mich. 1967) (noting "the basic rule of common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care"). Note the uncanny similarity between the duty described in the third-party cases and the duty described in the first-party cases: it is the same duty.

The problem here is that the majority's position turns this traditional rule on its head and presumes that the duty of due care only exists when one party is a stranger to the contract—that somehow the contracting party enjoys *less* protection than a stranger to the contract. Thus, the majority faults Ram for citing to the third-party cases but then relies almost entirely on them to

negate Ram's first-party claim. I agree that the third-party cases include a distinguishing factor—a third party—but that does not render the cases inapplicable. The third-party cases are on point because they, like *every* Michigan case in this arena, recognize "the basic rule of common law which imposes on *every person* engaged in the prosecution of *any undertaking* an obligation *to use due care*." *Loweke*, 809 N.W.2d at 558 (emphasis added).

The opinions of the Michigan Supreme Court should suffice to show that this duty existed and continues to exist. But to be thorough, I note that the Michigan Court of Appeals has also repeatedly recognized this duty in both the first-party and third-party contexts. *See, e.g.*, *Courtright v. Design Irrigation, Inc.*, 534 N.W.2d 181, 182 (Mich. Ct. App. 1995) ("While performing a contract, a party owes a separate, general duty to perform with due care so as not to injure another. Breach of this duty may give rise to tort liability."); *Osman v. Summer Green Lawn Care, Inc.*, 532 N.W.2d 186, 188 (Mich. Ct. App. 1995) ("[t]hose foreseeably injured by the negligent performance of a contractual undertaking are owed a duty of care") *overruled on other grounds by Smith v. Globe Life Ins. Co.*, 597 N.W.2d 28 (Mich. 1999); *Home Ins. Co. v. Detroit Fire Extinguisher Co., Inc.*, 538 N.W.2d 424, 428 (Mich. Ct. App. 1995) ("The duty arising is that which accompanies every contract: a common-law duty to perform with ordinary care the thing agreed to be done."); *Nelson v. Northwestern Sav. and Loan Ass'n*, 381 N.W.2d 757, 759 (Mich. Ct. App. 1985) ("every contractual undertaking is accompanied by a common law duty to use ordinary care in the performance of the task undertaken"); *Challenge Mach. Co. v. Mattison Mach.Works*, 359 N.W.2d 232, 237–38 (Mich. Ct. App. 1984) ("Negligent performance of an undertaking, even though grounded upon a contractual relationship, may constitute an actionable tort as well as breach of

contract."); *Nicholson v. Han*, 162 N.W.2d 313, 317 n.5 (Mich. Ct. App. 1968) ("The negligent breach of a contract involving misfeasance gives rise to an action for tort.").

And so has this circuit. *See, e.g.*, *Cleveland Indians Baseball Co., L.P. v. N.H. Ins. Co.*, 727 F.3d 633, 638–39 (6th Cir. 2013) ("Specifically, a contracting party owes a separate and distinct common law duty of care to *all those* whom the party knew or reasonably should have foreseen would be injured by the party's negligent acts or omissions.") (citing *Hill*, 822 N.W.2d at 196–98) (emphasis added); *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 840 (6th Cir. 2013) (quoting *Loweke*, 809 N.W.2d at 562, for the proposition that "[a] defendant—by performing an act under the contract—was not relieved of its preexisting common-law duty to use ordinary care in order to avoid physical harm to foreseeable persons and property in the execution of its undertakings"); *Moore*, 79 F. App'x at 134; *Am. and Foreign Ins. Co. v. Bolt*, 106 F.3d 155, 158 (6th Cir. 1997) ("Thus, the liability imposed turns on the defendant's failure to exercise skill and care in the performance of his work as required, independent of the contractual requirements undertaken, by this additional duty of care."); *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 550 n.1 (6th Cir. 1995); *Stiver v. Parker*, 975 F.2d 261, 271 & n.17 (6th Cir. 1992).

In sum, the duty to use due care in one's contractual undertakings does exist and has existed in Michigan for over one hundred years. We have recognized it, and it is hornbook law. It appears that the majority finds otherwise by falling prey to a recognized analytical error. "[I]nstead of asking if there was an independent tort duty," as Michigan common law instructs, the majority erroneously "ask[s] if the situation, or the injury, could have arisen independently of the existence of the contract." Vincent A. Wellman, *Assessing the Economic Loss Doctrine in Michigan: Making*

*Sense Out of the Development of Law*, 54 Wayne L. Rev. 791, 798 n.34 (2008). This error is common enough to be noticed. *See* Dobbs' Law of Torts §410 & n.1 (noting that although a tort duty "may . . . arise from voluntary contracts," "courts occasionally overlook or ignore the point and insist that an undertaking would be actionable only 'in contract' if it is actionable at all"). It has even been named by one commentator—it is the "sine qua non" error. *See* Wellman, 54 Wayne L. Rev. at 798 n.34.

The majority opinion provides a textbook (or hornbook) example of this error: "ADT did not owe Ram a statutory or common-law duty to detect the burglary or dispatch the police." True enough. But the law imposed on ADT a separate and distinct duty to use due care in rendering the services it contracted to provide. The law did not require ADT to protect Ram's jewelry store—the law did not force ADT to contract with Ram, nor did it force ADT to provide certain services to Ram. But once ADT decided on this undertaking, the law imposed a duty of ordinary care in its prosecution. That duty existed independently of the contract; it would exist even if ADT had acted only out of the goodness of its heart. As a result, ADT could have breached the contract without violating the separate tort duty—it could have, for example, notified Ram that it would cease providing services but would not refund Ram any money—and it could have violated the tort duty without breaching the contract (no provision of which requires ADT to exercise due care). But the majority concludes that because the contractual relationship gave rise to the tort (the "sine qua non"), there can be no tort at all. Put another way, the majority concludes that the existence of the contract somehow nullifies the duty to use due care when performing the contract. But the Michigan Supreme Court has made clear that "the existence of a contract . . . does not extinguish duties of care

otherwise existing." *Loweke*, 809 N.W.2d at 561 (quotations omitted). Thus, the majority's conclusion conflicts with Michigan law, *see, e.g.*, *Courtright*, 534 N.W.2d at 182 ("While performing a contract, a party owes a separate, general duty to perform with due care so as not to injure another. Breach of this duty may give rise to tort liability"), and with the basic principle that in Michigan "[t]he right to be compensated for injuries due to the negligence of another is well settled," *Cleveland Indians*, 727 F.3d at 639 n.6. *See also In re Bradley Estate*, 835 N.W.2d 545, 554 (Mich. 2013) ("as this Court has repeatedly recognized [for] nearly one hundred years . . . , when a party breaches a duty stemming from a legal obligation, other than a contractual one, the claim sounds in tort").

The confusion here lies between facts and law. It is true that the *duty* must be independent of the contract—that is, it must exist by operation of law—but the facts that give rise to the breach of that duty need not. *See, e.g.*, *Loweke*, 809 N.W.2d at 559 ("Courts have . . . erroneously focus[ed] on whether a defendant's conduct was separate and distinct from the obligations required by the contract or whether the hazard was a subject of or contemplated by the contract."); *Clark*, 150 N.W.2d at 760 ("the contract merely creates the state of things which furnishes the occasion of the tort"); *Churchill*, 152 N.W. at 990 ("And yet it is conceded that a tort may grow out of, or make part of, or be coincident with, a contract, and that precisely the same state of facts, between the same parties, may admit of an action either ex contractu or ex delicto."); *Oliver*, 52 N.W. at 612 ("The duty and the tort grow out of the entire range of facts of which the breach of contract was but one.").

*Spengler v. ADT Security Services, Inc.*, 505 F.3d 456 (6th Cir. 2007), also provides an example of the sine qua non error. In *Spengler*, the plaintiff's mother, whose cancer had rendered

her unable to speak, pressed an emergency call button provided by ADT. But ADT gave EMS the wrong address and the mother died. Nonetheless, this court summarily concluded that "ADT's obligation to promptly and correctly dispatch EMS emanated only from the contract . . . and thus no tort claim is available." *Id.* at 458. The leading torts treatise specifically criticizes *Spengler* for "overlook[ing] and ignor[ing]" the principle that a tort duty "may . . . arise from voluntary contracts." Dobbs' Law of Torts §410 & n.1.

Spengler failed to address the specific issue here—Michigan's duty of due care in one's undertakings. Nor can the case be read to establish some sort of *per se* rule of tort immunity for security system companies. Michigan has no such rule. *See S&M Golden Inc. v. Alarm Mgmt II, L.L.C.*, 2006 WL 141847 (Mich. Ct. App. Jan. 19, 2006), at *2 ("[d]efendant [alarm company] was clearly negligent"). And *Spengler*, of course, cannot be read to eliminate "the 'basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care." *Loweke* 809 N.W.2d at 558 (quoting *Clark*, 150 N.W.2d at 760). Federal courts cannot make state law. Nor can the case be read to conflict with this circuit's prior precedent that in Michigan "the law imposes an obligation upon everyone who attempts to do anything, even gratuitously, for another, to exercise some degree of care and skill in the performance of what he has undertaken, for nonperformance of which duty action lies." *Bolt*, 106 F.3d at 158. Of course, *Bolt*, the published decision issued before *Spengler*, controls. *See Rutherford v. Columbia Gas*, 575 F.3d 616, 619 (6th Cir. 2009). Our choices, then, are either to confine *Spengler* to its unique facts or frankly acknowledge that the case was wrongly reasoned and in conflict with our existing precedent in *Bolt*. To paraphrase Justice Jackson, there is no reason why we should be

consciously wrong today simply because we were unconsciously wrong in *Spengler*. *See Mass. v. United States*, 333 U.S. 611, 640–41 (1948) (Jackson, J., dissenting).

And as this case illustrates, no dire consequences await if we honor Michigan's determination that "[a]ccompanying every contract is a common-law duty to perform the thing agreed to be done with care, skill, reasonable expediency, and faithfulness, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract." *Chase*, 217 N.W. at 567 (quotation omitted). In Michigan parties can contract to limit the scope of their liability for ordinary negligence by capping damages at a fixed amount, which is precisely what Ram and ADT did here. *See, e.g.*, *Lamp v. Reynolds*, 645 N.W.2d 311, 314 (Mich. Ct. App. 2002). Michigan's rule anticipates contracting parties can and will protect themselves from ordinary negligence claims by contractually limiting damages. This rule addresses any concern over uncontrolled liability. But acknowledgment of this rule reveals a further conceptual problem with the majority's holding and its reading of *Spengler*. Michigan's rule (and contractual provisions based upon it) would be superfluous if one contracting party did not owe the other a general duty of care in the performance of her contracted-for undertaking. No party would need to limit liability for ordinary negligence if negligence is something for which a party cannot be liable.

Perhaps more important to Michigan law is its determination that, in contrast to ordinary negligence, parties cannot contractually limit liability for gross negligence. *See, e.g.*, *id.* Gross negligence, like ordinary negligence, requires a breach of a legal duty. *See Maiden v. Rozwood*, 597 N.W.2d 817, 831 (Mich. 1999). Eliminating the "separate, general duty to perform with due care" would thus also eliminate the possibility that a contracting party could be liable for gross negligence.

Under the majority's holding, a contracting party could be grossly and willfully negligent with impunity. That does not comport with Michigan law or with the balance of interests Michigan effectuates through its laws. I would therefore continue to recognize the existence of a duty and harmonize this case with the law and underlying policy long in effect in Michigan that a party (1) may be liable in tort for not performing its contractual obligations with due care; and (2) may contractually limit the scope of liability for ordinary negligence; (3) but cannot contractually limit liability for gross negligence.

Turning to the application of Michigan's law to the case at hand, Ram has alleged a plausible negligence claim. This case arose from a motion to dismiss and so we must "accept all allegations as true." *Keys*, 684 F.3d at 608. From the complaint, we know that ADT was engaged in the performance of an undertaking: To provide security services for Ram. Somehow, even though ADT received at least two alarm signals, including a "burglary in progress" alarm, ADT did nothing. ADT did not notify the police. ADT did not notify Ram, perhaps in part because it had improperly installed the alarm system. These allegations are sufficient to state a claim for negligence and to withstand a motion to dismiss.

In sum: (1) by operation of law, ADT owed Ram a duty of due care when it undertook to provide it security services, *see, e.g.*, *Hill*, 822 N.W.2d at 196; (2) this duty, because it was imposed by operation of law, was "separate and distinct" from ADT's contractual obligations, *see, e.g.*, *Loweke*, 809 N.W.2d at 558; (3) and ADT plausibly breached that duty when it utterly failed to respond to the alarm signals that indicated Ram's store was being burglarized, *see S&M Golden Inc. v. Alarm Mgmt II, L.L.C.*, 2006 WL 141847, at *2 (Mich. Ct. App. Jan. 19, 2006). Ram's negligence

claim should survive a motion to dismiss.  Because the majority concludes otherwise, I respectfully

dissent.